38 P.3d 625

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Arthur SCOVELL, Defendant–Appellant.**

**No. 26181.**

Court of Appeals of Idaho.

Nov. 1, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Richard J. Hansen, Deputy Appellate Public Defender, Boise, for appellant. Richard J. Hansen argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

LANSING, Judge.

Arthur Scovell appeals from his conviction of four counts of lewd conduct with a minor. He argues that evidence of his prior sexual misconduct with the same victim and hearsay evidence of the victim's contentions were erroneously admitted. He also challenges the sentences imposed and the denial of his motion for reduction of the sentences.

## I.

### FACTS AND PROCEDURAL HISTORY

Scovell was charged by grand jury indictment with four counts of lewd conduct with a minor under sixteen, Idaho Code § 18–1508. The charges were based on allegations that he had molested his stepdaughter, S.H., over a period of approximately two years when S.H. was nine to eleven years old. The charges included allegations of manual/genital contact, oral/genital contact and genital/genital contact with S.H.

Following a jury trial, Scovell was found guilty of all four counts. The district court imposed four concurrent indeterminate life sentences with fifteen-year minimum terms of imprisonment. Scovell filed a motion to reduce his sentences, which was denied. Scovell appeals, arguing that there was error in the admission of evidence at trial and that the sentences are excessive.

## II.

## ANALYSIS

### A. Uncharged Sexual Misconduct

Over Scovell's objection, the State was allowed to present S.H.'s testimony about incidents of sexual molestation by Scovell during the eighteen months preceding the time covered by the indictment. Scovell argues that this evidence of prior misconduct was irrelevant to any contested issue in his trial and was therefore inadmissible.

The admissibility of evidence of a criminal defendant's uncharged misconduct is governed by Idaho Rule of Evidence 404(b), which provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but may be admissible "for other purposes." When such evidence is offered, a trial court must employ a two-part analysis. First, the court must determine whether the evidence is relevant to a disputed material issue concerning the charged crime. *State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991); *State v. Pugsley,* 128 Idaho 168, 177, 911 P.2d 761, 770 (Ct.App.1995). On appeal, the trial court's decision on this prong is reviewed de novo. *State v. Mac-Donald,* 131 Idaho 367, 369, 956 P.2d 1314, 1316 (Ct.App.1998). If the evidence is relevant, the trial court must then consider whether its probative value is substantially outweighed by unfair prejudice. *Moore, supra; Pugsley, supra.* This balancing of probative value and unfair prejudice is committed to the trial court's discretion, and will not be reversed on appeal absent an abuse of discretion. *MacDonald, supra; Pugsley, supra.*

The Idaho Supreme Court has held that in prosecutions for sexual molestation of a child, evidence of uncharged incidents of the defendant's sexual misconduct with the same victim or with other children is relevant to demonstrate the young victim's credibility. *State v. Tolman,* 121 Idaho 899, 904, 828 P.2d 1304, 1309 (1992); *Moore,* 120 Idaho at 745–46, 819 P.2d at 1145–46. In *Moore,* the Court stated: "Evidence of similar acts of sexual misconduct *between a defendant and the victim* or between the defendant and another witness is admissible for corroboration of the victim's testimony in sex crime cases." *Id.* (quoting *State v. Schwartzmiller,* 107 Idaho 89, 93, 685 P.2d 830, 834 (1984)) (emphasis added). According to the Supreme Court, hearing detailed testimony about prior uncharged incidents may render the jury "better able to compare patterns and methods, details and generalities, consistencies and discrepancies, and thereby [make] a more meaningful and accurate assessment of the parties' credibility." *Tolman,* 121 Idaho at 905, 828 P.2d at 1310. Additional cases affirming the admission of evidence of the defendant's prior or subsequent uncharged sexual misconduct with the same victim include *State v. Tapia,* 127 Idaho 249, 256, 899 P.2d 959, 966 (1995); *State v. Lewis,* 123 Idaho 336, 350–51, 848 P.2d 394, 408–09 (1993); and *State v. Hansen,* 127 Idaho 675, 680, 904 P.2d 945, 950 (Ct.App. 1995).

In the present case, S.H.'s testimony about when and how the abusive behavior began allowed the jury to see the full picture, putting her testimony about the charged acts into context. The challenged testimony gave the jury a better ability to assess whether S.H. was fabricating her story or telling the truth. Therefore, we hold that the evidence was relevant to S.H.'s credibility.

Having concluded that the evidence of uncharged misconduct was relevant, we must consider whether the district court abused its discretion in determining that the probative value of the evidence was not substantially outweighed by unfair prejudice. *See* I.R.E. 403. In evaluating the possible unfair prejudice, we bear in mind that S.H. testified extensively about the four *charged* acts of

sexual molestation. Her testimony about uncharged molestation described behavior similar to the charged offenses. Thus, except with respect to the dates that the events occurred, the challenged evidence was largely cumulative to the evidence of the charged acts. This factor significantly attenuates the prejudicial effect. The risk of unfair prejudice was further reduced by the trial court's instruction that the jurors were not to consider the uncharged acts as proof that Scovell had criminal propensities or behaved in conformity with them by committing the charged crimes. We conclude that the district court did not abuse its discretion in balancing the probative value of the evidence of uncharged misconduct against the risk of unfair prejudice and admitting the testimony into evidence.

## B. Hearsay Evidence

After S.H. reported that Scovell had sexually molested her, S.H. received treatment from Renee Hatten, a mental health therapist. Hatten testified, without objection, that in her opinion S.H. had been sexually molested. During Hatten's testimony, three documents that were prepared in the course of S.H.'s therapy were admitted over Scovell's objections. The first of these, Exhibit 3, is a handwritten list prepared by S.H. at the therapist's request describing how the molestation made her feel and describing things that trigger her memories of the abuse. The next document, Exhibit 4, is Hatten's handwritten notes recording S.H.'s oral responses after Hatten asked S.H. to give reasons why the abuse was the fault of Scovell and not the fault of S.H. The last challenged exhibit, Exhibit 5, was typed by S.H.'s grandmother and purports to reflect information dictated to the grandmother by S.H. describing how

the molestations typically occurred. According to Hatten's testimony, Exhibit 5 was prepared at Hatten's instruction as a treatment exercise. The only foundation for admission of these three exhibits was presented through Hatten, who testified that all of the documents were components of S.H.'s therapeutic treatment and that Hatten relied upon them in forming the opinions to which she testified at trial.

On appeal, Scovell argues that all three exhibits were hearsay made inadmissible by I.R.E. 802. In the trial, however, defense counsel raised a hearsay objection only as to Exhibit 4. Although the defense also objected to Exhibits 3 and 5, the objections raised did not include a contention that the documents were hearsay. The failure to make an objection at trial precludes appellate review of the alleged error. I.R.E. 103(a)(1); *State v. Lesley*, 133 Idaho 23, 25, 981 P.2d 748, 750 (Ct.App.1999); *State v. Gleason*, 130 Idaho 586, 592, 944 P.2d 721, 727 (Ct.App. 1997). An objection to evidence on one ground does not preserve a claim that the evidence was inadmissible for a different reason. *State v. Norton*, 134 Idaho 875, 880, 11 P.3d 494, 499 (Ct.App.2000). Because Scovell did not raise a hearsay objection at trial, his present contention that Exhibits 3 and 5 were inadmissible hearsay has not been preserved for appellate review.

Because Scovell did make a hearsay objection to Exhibit 4 at trial, we will examine his hearsay argument with respect to that exhibit. Exhibit 4 is in Hatten's handwriting but purports to be quotes of S.H.'s statements to Hatten, given during a therapy session, in which S.H. listed reasons why Scovell, and not S.H., is at fault for the sexual molestation.[1]

---

1. Exhibit 4 states:

    *Why S.A. Not My Fault*
Because ...
1. I'm a kid—he's the adult.
2. He's the one that is sick.
3. He's the one who is not a responsible adult.
4. I didn't ask for it to happen.
5. I didn't like it.
6. I wasn't protected by mom.
8. He is the one on drugs.
9. I wasn't old enough to make that choice.

10. He did it; I didn't.
11. I had no control over it.
12. He's the bad guy.
13. He chose to do the bad thing.
14. All the threats i.e. "If you tell anybody, I'll make sure you never see your mom or family again." All the tricks i.e. "I'm going to teach you about sex." When [S] asked why he's doing this, he'd say "because I love you!"
15. He didn't love me, he used my family, esp. my mom.

The State concedes that Exhibit 4 is hearsay and that none of the hearsay exceptions in I.R.E. 803 and 804 apply. The State argues, however, that the exhibit is admissible under I.R.E. 703, which governs expert testimony. That rule states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.*

(Emphasis added.) The State relies upon the italicized language for the proposition that if an expert testifies that she relied upon otherwise inadmissible hearsay in formulating an opinion, the hearsay is admissible at the behest of the party who proffers the expert testimony.

This assertion is not supported by the language of the rule. The rule addresses the type of information upon which an expert *may rely* in developing the opinions or inferences to which the expert will testify at trial; the rule does not contain any provision for admission into evidence of the material the expert relied upon. That is, it is the admissibility of the expert's opinion that is provided by Rule 703, not the admissibility of the underlying facts or data.

This interpretation is consistent with reported Idaho decisions applying Rule 703. In *Doty v. Bishara,* 123 Idaho 329, 336, 848 P.2d 387, 394 (1992), where the cause of a tire failure was at issue, the Idaho Supreme Court held that the trial court properly allowed expert Beyer to testify to his opinion on the cause of tire damage where his opinion was based, in part, on photographs and notes prepared by another expert who had also examined the tire. Although the *Doty*

opinion indicates that expert Beyer was allowed to testify "concerning observations made by" the other expert, the case does not indicate that the other expert's notes or photographs were placed directly in evidence or that such would have been permissible.

In *Lawton v. City of Pocatello,* 126 Idaho 454, 463–64, 886 P.2d 330, 339–40 (1994), a case that arose out of a motorcycle accident at an intersection, our Supreme Court held that testimony was properly admitted from an expert who made reference to reports of other accidents that occurred in the same area. The decision makes clear, however, that the reports of other accidents were not admitted into evidence.

Most recently, our Supreme Court considered Rule 703 in *Basic American, Inc. v. Shatila,* 133 Idaho 726, 743, 992 P.2d 175, 192 (1999), where a corporation's vice president of marketing and research testified as an expert witness, giving opinion testimony concerning the corporation's profits and costs. The vice president based his opinion in part upon a report prepared by another employee of the corporation. The Supreme Court upheld admission of the testimony under Rule 703 because the trial court had properly determined that the vice president was a qualified expert and that the other employee's report contained the sort of information that experts in that field would rely upon in forming an opinion. Importantly, the other employee's report itself was *not* admitted into evidence and, indeed, the party proffering the expert testimony conceded that the report was hearsay and not admissible to establish the truth of the information contained within it.

None of the foregoing cases hold that otherwise inadmissible hearsay, upon which an expert relies in formulating an opinion, is made automatically admissible by Rule 703.[2]

16. He is guilty.
17. It was his idea.
18. He had more power.
19. He's a dirty person and I'm not.
20. He wanted to hurt me, I didn't hurt myself.
21. He was violent, strong-willed and rude.
22. He had already hit me before many, many times.
23. I was scared he'd hurt others in my family again.
24. He called me names; "bitch," "lyer," [sic] "brat," "sorry-ass."
25. He said "I like your body."

2. One Idaho appellate decision arising before adoption of the Idaho Rules of Evidence approved the disclosure of hearsay through an expert witness. In *Long v. Hendricks,* 109 Idaho

We acknowledge that some federal courts have held that the corresponding Federal Rule of Evidence 703 renders hearsay admissible to show the basis of an expert's opinion. *See, e.g., Trepel v. Roadway Exp., Inc.,* 194 F.3d 708, 717 (6th Cir.1999); *Wilson v. Merrell Dow Pharms., Inc.,* 893 F.2d 1149, 1153 (10th Cir.1990). However, even in those cases the courts held the hearsay admissible only for the purpose of showing the basis of the expert's opinion and not for proving the truth of the matter asserted. *Trepel, supra; Wilson, supra.*[3] Here, the court gave no instruction limiting the purpose for which the jury could consider Exhibit 4.

■ We conclude that although Rule 703 authorizes the admission of expert opinions that are based upon hearsay or other inadmissible information, (if the information is of a type reasonably relied upon by experts in the field), the rule does not provide that the hearsay information itself is automatically, independently admissible in evidence. Therefore, the district court erred in admitting Exhibit 4, which was a hearsay record of S.H.'s out-of-court assertions.

■ This conclusion requires that we determine whether the error necessitates a new trial for Scovell. Idaho Criminal Rule 52 directs that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In other words, a new trial is unnecessary if an error was harmless. The test is "whether a reviewing court can find beyond a reasonable doubt that the jury would have reached the

same result without the admission of the challenged evidence." *State v. Moore,* 131 Idaho 814, 821, 965 P.2d 174, 181 (1998) (quoting *Giles v. State,* 125 Idaho 921, 925, 877 P.2d 365, 369 (1994)); *see also State v. Pecor,* 132 Idaho 359, 363, 972 P.2d 737, 741 (Ct.App.1998).

■ We are confident that the error in the admission of Exhibit 4 was harmless due to the breadth of other evidence of Scovell's guilt. S.H., who was fourteen years old at the time of trial, testified in detail about the lewd conduct, including when and how the abuse began and numerous, specific instances of abuse. She was old enough to understand the significance of her testimony and to articulately describe the charged behavior. In addition, the State presented the testimony of a physician who had examined S.H. and testified that her hymen was extremely abnormal. The physician opined that S.H.'s hymen had been penetrated and that its condition was consistent with numerous penetrations over time rather than a single incident. In addition, as noted above, S.H.'s counselor, Dr. Hatten, gave an opinion that S.H. was subjected to sexual molestation. The jury also heard the testimony of a nurse from the Children at Risk Evaluation Services (CARES) who interviewed S.H. shortly after S.H.'s disclosure of the abuse, and the jury saw a videotape of the interview, which corroborated S.H.'s trial testimony. Looking at the sum of the evidence, we conclude beyond a reasonable doubt that the jury would have reached the same verdict if Exhibit 4 had been excluded.

73, 705 P.2d 78 (Ct.App.1985), a physician, Dr. Bryner, who testified about the plaintiff's condition, referred to the records of Dr. Shaw, who had treated the plaintiff. In Dr. Bryner's testimony, he related information from Dr. Shaw's records. This Court upheld the admission of the content of Dr. Shaw's records under a perceived modern trend in the law "to allow a medical expert witness to both give his opinion and state the facts upon which the opinion was based even though he relied in part upon the records of another medical expert." *Id.* at 76, 705 P.2d at 81. However, because the trial in *Long* was conducted before adoption of the Idaho Rules of Evidence, this ruling was not an application of I.R.E. 703.

**3.** The federal rule was amended in 2000 to address this issue of the admissibility of the data

upon which an expert relies. The rule now states (with language added by the amendment underlined):

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

## C. Sentence

▮▮▮ We next consider Scovell's contention that his concurrent indeterminate life sentences with fifteen-year minimum terms are excessive. When a sentence is challenged on appeal, we examine the record, focusing upon the nature of the offense and the character of the offender, to determine if there has been an abuse of the sentencing court's discretion. *State v. Young*, 119 Idaho 510, 808 P.2d 429 (Ct.App.1991). The defendant bears the burden to show that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brooke*, 134 Idaho 807, 810–11, 10 P.3d 756, 759–60 (Ct.App. 2000); *State v. Rodriguez*, 132 Idaho 261, 265, 971 P.2d 327, 331 (Ct.App.1998); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). In reviewing a sentence, we treat the minimum term specified by the sentencing judge as the probable duration of confinement. *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). Because sentencing decisions involve consideration of many intangibles and cannot be made with precision, where reasonable minds might differ as to the propriety of the term of confinement, the discretion vested in the sentencing court will be respected. *Toohill, supra.*

▮▮▮ Scovell is a multiple offender. He had previously been convicted of four felonies—theft, kidnapping, robbery, and burglary—as well as several misdemeanors. Scovell took no responsibility for the present offenses, and at sentencing continued to deny that he had molested S.H. A psychosexual evaluation indicated that there was a high probability that Scovell would reoffend. The record shows that the district court considered the sentencing objectives listed above and all the relevant evidence in formulating a sentence designed to protect society from Scovell, to appropriately punish his criminal acts, and to deter Scovell and others from such behavior. A sentence need not serve all the goals of sentencing; it may serve any one or more of them. *State v. Warnell*, 124 Idaho 729, 733, 864 P.2d 175, 179 (Ct.App. 1993). The goals of punishment, retribution and deterrence, by themselves, are sufficient to justify a sentence. *Id.* Scovell has not shown that the district court abused its sentencing discretion.

▮▮▮ Scovell also challenges the denial of his motion for reduction of his sentences. A motion to reduce a sentence pursuant to Idaho Criminal Rule 35 is a plea for leniency which is addressed to the trial court's discretion. *State v. Olivera*, 131 Idaho 628, 632, 962 P.2d 399, 403 (Ct.App.1998), *State v. Lopez*, 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct.App.1984). On an appeal from the denial of a Rule 35 motion, we utilize the same criteria used in reviewing the original sentence. *Olivera, supra.* If a sentence was not excessive when imposed, the petitioner must show that it is excessive in light of new or additional evidence presented with the motion. *Id.* We have concluded above that the district court did not abuse its discretion in imposing the sentences in this case. Scovell provided no new evidence in support of his motion for reduction of the sentences. Therefore, we hold that the district court did not abuse its discretion in denying the Rule 35 motion.

## III.

### CONCLUSION

The district court's admission of evidence of uncharged sexual misconduct by Scovell against the same victim is affirmed. Although we conclude that the district court erred in admitting Exhibit 4, we deem the error harmless in light of the strength of the remaining evidence of Scovell's guilt. The district court did not impose excessively harsh sentences and did not abuse its discretion by denying Scovell's Rule 35 motion. Accordingly, the judgment of conviction and sentences are affirmed.

Judge PERRY concurs.

Chief Judge SCHWARTZMAN, specially concurring.

I concur in this opinion, albeit reluctantly. The opinion, as far as it goes, is technically and substantively correct. However, Scovell did NOT receive a fair trial, in my opinion, and had the appropriate objections been

made, not only should Exhibits 3 and 5 have been excluded, but the substance of Hatten's so-called "expert opinion" as well. *See State v. Eytchison,* 136 Idaho 210, 30 P.3d 988 (Ct.App.2001); *State v. Konechny,* 134 Idaho 410, 3 P.3d 535 (Ct.App.2000).

Exhibit 5 is a running stream of consciousness dictated to grandma entitled "Bad Memories," while Exhibit 3, also choreographed by the therapist, describes how the alleged molestation made the victim feel and ends with the phrase, "people who don't believe in God." Exhibit 4 has been reproduced at footnote 1, *supra.* Why the state seeks to jeopardize its case with highly prejudicial, inadmissible evidence of this kind eludes me. Enough is enough! It is high time for the prosecution to get the message that sometimes *less can be more.*

I would not have the slightest hesitation in concluding that error was committed in the admission of all of the above evidence in this case were it properly framed by way of objection. Nor would I be convinced beyond a reasonable doubt that the same result would have been reached by the jury had this evidence been properly excluded.

Accordingly, this case must await its next incarnation in the form of an application for post-conviction relief.